19-2291 So we'll first hear this morning from Mr. Jendi Yes sir You may proceed Thank you judges I represent Mr. Pulera in this matter And I would note that in the thousands of words expended in defense of the egregious actions in this case None of the defendants can deny that Mr. Pulera's brother warned the facility that Mr. Pulera was suicidal in April of 2012 Further, all of the defendants asked this court, just as they did the district court To simply ignore that another inmate who was present during Mr. Pulera's intake Readily heard Mr. Pulera verbally express thoughts of self-harm And saw him exhibit actions that indicated a desire to self-harm Mr. Pulera had a long history at the Kenosha County facility Two times he had been incarcerated in 2011 Both times he underwent a mental health screening During the second incarceration in October of 2011 He was considered a suicide risk and was put on an observation level That had not been removed by the time he was released in October of 2011 In April of 2012, during the intake process Mr. Pulera was exhibiting multiple signs of bizarre behavior He was crying, he appeared intoxicated He was put in a holding cell for additional observation All signs that he may be suffering from mental health issues Despite Mr. Pulera's indications Despite Mr. Pulera's indications of both verbal self-harm And making gestures of slashing his throat None of the intake officers looked at his prior health history They essentially cleared him for general population And thus Mr. Pulera's odyssey began Over the course of the next 36 hours Mr. Pulera requested his prescribed medications Repeatedly through three intake medical requests None of the nurses that were responsible for reviewing those requests Responded to them immediately as they were required to None of the nurses that received these medical requests Went to see Mr. Pulera personally After a period of time, Mr. Pulera's brother Dropped off his prescribed medications Clonazepam for anxiety and Tramadol for his pain So Mr. Pulera was aware that his medications were on site Once the medications were provided to the facility They took a pill count And according to their pill count A significant number of the medications were missing As a result... Counsel, this is Judge Barrett Can I ask you a question for a moment? That shifts from the facts to the law So there's a dispute in this case About whether the Fourth Amendment or the Fourteenth Amendment should apply here And I want to know whether after Miranda v. Lake County There's really any difference between the two Given that Miranda adopts an objective reasonableness standard Which I'm wondering whether that would be similar to the Fourth Amendment standard Your Honor, I would agree with that analysis It seems like objective reasonableness Was what the district court obviously applied And the vast majority of arguments presented to the Seventh Circuit Essentially focus on that standard So it's your position It doesn't really matter You know, whether he'd had his Gerstein hearing or not Because whether he was pre-Gerstein or post-Gerstein We're still applying an objective reasonableness standard So that the Fourth and Fourteenth Amendments don't meaningfully differ That would be plaintiff's position Yes, Your Honor Okay, thank you Mr. Cheney, this is Judge Saini But before you go further I just want to make clear You aren't disputing the dismissal of defendants Slater, Ramos, Smith, Schlecht, Palomola, and Beth Are you? We are not  And you started out your argument by Saying that Mr. Pallera's brother Had warned the facility numerous times About his mental state And his need for medication I didn't see anything in the record Clarifying who Mr. Pallera's brother Conveyed that information to Is there anything that supports That he conveyed that specific information To any of the particular defendants Who you're appealing the judgment as to? Yes, Your Honor It would be Nurse Sigourney And I'm sorry I don't have her Specific spelling in front of me But this was during the course of a phone call After Pallera's brother had dropped off the medications He then called the facility to ask Whether or not Mr. Pallera was receiving them And there's a dispute by Sigourney As to whether or not the brother expressed Pallera's suicidal tendencies She said she didn't really understand Because he was yelling She doesn't necessarily say She didn't provide that information She just claims lack of knowledge Because she couldn't decipher what he was saying Counsel, I thought that the brother Wasn't sure which nurse he spoke to Well, he may not be sure But Sigourney admits to taking the phone call So although he didn't have a name Sigourney says she did speak to the brother Is it Summer Scroi? Is it the nurse's name, Summer Scroi? Yes, I think that's it Thank you, Your Honor Okay But she doesn't clarify The records aren't clear Exactly when she took that call  The suicide attempt, is she? Well, I can't say for certain But I'm fairly sure that The phone call came in Prior to the suicide attempt The problem is there was a late entry made By Summers after the suicide attempt Indicating that the phone call had been made So that may be What causes some confusion for the court But is there testimony from the brother? Is there testimony from the brother? He said he called the facility numerous times Summers' records reflect That she received a call From his brother on Sunday I know she disputes the content of it But also disputes the timing of it Did his brother indicate That he made that call On Sunday before the suicide? I don't know if he said a specific time But I'm fairly certain that he said The phone call was made Prior to the suicide attempt Because Mr. Blair was not receiving his medications As a result of Dr. Butler Who was off-site Not setting them up Because of her alleged concern That he had abused those medications Within the prior 24 hours Which brings us to another point Of Dr. Butler's contradictory defense Which makes no sense If you read the totality of the circumstances First of all Butler failed to document Her alleged concerns About the abuse of the medications Anywhere in the medical chart And Nurse Reed indicated That had those concerns by Butler Been made available to Reed They would have been documented in the chart So it sounds like Butler came up with a post hoc reason For denying the meds That was not revealed until Deposition several years later This is Judge St. Evigen Let's assume That there's a question of fact As to whether or not Dr. Butler Acted unreasonably Based upon the facts That you're conveying now How do you get around the fact That there was uncontested Expert testimony From Dr. Ness Via an affidavit That said there was zero risk Of cutting Mr. Pallera's medication Cutting off Mr. Pallera's medication Would cause or make him act suicidal So I think that's a very good point Your Honor And the focus on suicide Is not what the 7th Circuit Jurisdictions indicate It's any pain Suffering disability That emanates From the constitutional misconduct Now There may be But that's not true For the question of causation This would go directly to causation Maybe in The unreasonable actions Or your alleged unreasonable actions We look at something broader But if we're looking at causation And your case is about Attempted Suicide And the expert Uncontested expert Testimony As to Dr. Butler And the medication Says that there was a zero risk That cutting him off Even cold turkey Cutting him off Would cause Or make him acutely suicidal How do you get around that On a causation perspective With all due respect Your Honor I dispute that representation Our expert Dr. White Indicated That cutting Mr. Blair off Cold turkey Would increase his anxiety And that titration would be appropriate Just as the facility Had titrated his clonazepam In 2011 During prior incarcerations And proximate cause is generally A question for the jury Which we did not reach In the underlying briefs Because the district court found No misconduct But in any event Your Honor I would suggest to this court That it's not just the suicide This gentleman had 36 hours Of significant pain and suffering Where he was requesting Immediate medical attention Including being allowed to access His prescribed medications That he's been on long term We know since at least 2011 Because those medications Were being provided to him At the facility During that time period But counsel When vitals checks were done On your client His vitals all showed That they were normal When one of the nurses Asked the zone officer To go in and check on them He was walking around Asking for the remote He appeared that he wasn't in distress So it's not a situation You're suggesting That they ignored his statements That he was in pain Oh yes they did They certainly ignored his statements He wasn't checked until 36 hours After he started making these requests Remember there's three Inmate medical request forms And the correctional staff That you're referring to That's again a late entry made After the suicide attempt So there's a couple of late entries That attempt to cover the tracks Of the facility And certainly at some re-judgment Reasonable inferences could be made That correctional officer Didn't do what the nurse says he did And in any event Since when is a correctional officer Tasked with providing medical care When inmate medical requests Are directed to the nurses Specifically for the purpose Of evaluating that request Now when we go back to the hand part Butler indicates she wasn't advised Of all these complaints being made And the nurses indicate that she was So there's a dispute of fact As to whether the nurses are being accurate Or Butler's being accurate And why is that important Because in the event The nurses had expressed What were his IMRs I'm having difficulty breathing My heart hurts I'm anxious I'm depressed I need my medications Or I could die That would have allowed Butler To re-evaluate her refusal To allow the medications In addition It might have prompted The implementation of policies and procedures Already in place For inmates that are suffering from withdrawal Or the signs and effects of detoxification And what Polaro was describing In those inmate medical request forms Are exactly that Anxiety Depression I need my meds My heart hurts I can't sleep I'm nauseous I'm throwing up All signs of either withdrawal Or difficulty with detoxification And we know from the outset That Polaro was having issues With intoxication During the screening period He was put in a holding cell For observation And if Butler's allegations That she was so concerned About the amount of medications Polaro had taken prior to Being incarcerated Why didn't she implement Withdrawal or detoxification procedures There was no impediment To providing that care As a matter of fact It was readily available In a written policy and procedure So Dr. Butler can't have it both ways I'm so concerned And he may have overdosed That I withheld his prescribed medication And yet she did nothing In follow up Didn't document those concerns And never allowed him his medications Never attempted to call The prescribing physician Never attempted to investigate What the source of the missing pills Or why they were missing From start to finish I'm sorry Mr. Jendi Yes sir You have 4 minutes and 52 seconds left You're in to rebuttal You may use the time as you see fit But I just wanted to mention that to you I appreciate the warning your honor I will reserve my remaining time for rebuttal Thank you We'll now hear from Mr. Bittar Good morning your honor Remzi Bittar On behalf of Correctional Officer Sarzant Gerber Zawila And Kenosha County The arguments and inferences That plaintiffs are pressing upon the court Are only part of the picture Including what the brother May have said in a telephone call The other part of the picture Is what Pallera actually said And what he did And whether any of the particular defendants Based on the information in front of them Acted objectively Unreasonably In failing to decipher his mind What is Undisputed in this case Was that There were vitals that were Checked His physical Check occurring 5 hours Before this attempted suicide On his temperature Pulse, respiration Blood pressure 10 minute observation with the nurse face to face Showed that he was perfectly fine And he was exhibiting no symptoms Showing any kind of Deteriorating health condition Isn't the length of his Interaction Isn't the length Of his interaction with the nurse When she went to check his vitals A question of fact here There was some testimony That it only lasted a minute or so Not 10 Well I don't think it's a question of fact Because it's not It depends upon Which defendant we're talking about Relative to the jailers Who had no contact with him Other than the initial intake They had no information From Mr. Pallera That he was behaving in an odd way Or he was making any kind of Expressions of self harm And for that particular nurse Who saw him 5 hours Before the suicide She was able to see him face to face And engage him She was able to pick up Whether there were any non-physical signs Mr. Pallera also testified He had the opportunity To express his feelings to her To talk to her If he had any such concerns Plaintiffs Rely very heavily Upon what the brother may have said But that Even if we assume that There's a risk that we're just Blocking the system By relying solely In a dispositive way What the brother may have said In every reported decision Where a family member Or a fellow inmate has conveyed Such information There's also been additional information From the inmate himself Expressing self harm Or showing bizarre behavior Or significantly deteriorating Physical or mental health Or the like We see that in many cases Why wouldn't Mr. Pallera's Medical request Satisfy that here? Well When we look at his first medical request All he's asking for Is medication He doesn't express any kind of physical Or mental deterioration With the second And third request The nurses do check On him in a phone call With the doctor And then they ultimately check on his vitals And he was perfect With respect to those vitals So those inmate medical requests Standing alone Don't create the kind of case That the plaintiffs are looking for here Mr. Pallera himself admitted That those inmate medical requests Don't say he's suicidal That he's having thoughts of killing himself That he's experiencing Any kind of withdrawals Or that he needs a mental health specialist Or a crisis worker And even Beyond those Inmate medical requests We have to keep in mind that he never once Communicated to any of the correctional Officers that he was having Any kind of mental distress Or was thinking of suicide His only meaningful interactions With the correctional officers in this case Involved Sarzant When he was initially brought in And both he And Sarzant both testified That he did not exhibit any kind of suicidal Behaviors Did not mention he was suicidal At one point he's pounding on the door Because he's cold and wants A jacket or clothing And she gives him a jacket I would also point out that Counsel referenced The cousin or another inmate That other inmate Is the cousin And what that inmate may have Said or seen Occurred before Mr. Gerber The admission release specialist Conducted his evaluation And as shown in that Medical questionnaire And as shown by Mr. Polaris own testimony There was nothing that Indicated that he was suicidal He specifically answered the question No. In his prior detention When he thought that he had Suicidal thoughts or Thoughts of self-harm He knew how to convey that to the officers And he didn't do it on this occasion As Judge Griesbach found We are evaluating the objective reasonableness Based on what the particular Defendant knew What information they had in front of them At the time There was a question In terms of the 14th amendment It is the county's position That Mr. Polaris Was actually Under the 14th amendment Not the 4th amendment Does that matter? It does matter Because the 14th amendment Has a higher threshold In terms of deliberate indifference Mr. Polaris was charged with Battery Not after Miranda v. Lake County Miranda holds that the 14th amendment Applies an objective reasonableness standard Not a deliberate indifference standard That's true, your honor That's true So it would apply consistent with Miranda But there is A host of legal Principles from within those Cases that would still Carry over here I don't think that those 8th amendment Cases or those 14th amendment Cases are simply Tossed aside Those cases are replete With situations Where the courts are looking at the totality Of the circumstances They're trying to decipher what information Was known to the particular Correctional officer or The nurses They are replete with the standard As occurred here That the correctional officers may properly rely On the medical staff And they Certainly draw a line that allows That disallows any mere disagreement With the medical decisions That are being made By Dr. Butler Which I'll leave to her counsel To address further Your time has expired Do you want to make a final comment? Well the final comment Would be we request that this Court affirm the decision of Judge Griesbach because even assuming All of the arguments and inferences That have been presented this morning Those facts do not even Rise to a Risk of imminent suicide risk That we see in some of these other Cases in the circuit Including Johnson vs. Garrett that was just decided several Months ago That's case number 19-1383 Novak, Collins And Mados Thank you your honor Thank you Mr. We'll now hear from Mr. Casper Thank you your honor Good morning Colin Casper on behalf of the BNCC defendants As seen throughout this case and into this Appeal and even as we've heard this Morning what Mr. Polaro Wants is to retroactively Review the facts underlying This matter and apply them with Hindsight analysis rather than to The applicable law That is not the standard The standard is one of objective reasonableness Which maintains a focus on the Facts and circumstances at the time That they occurred. Review under This standard ensures that Judge Griesbach was correct in dismissing This case and the BNCC defendants should be dismissed And we ask the court would affirm the same Under this Standard it is indisputable that Polaro Must show the nurses had a notice Of substantial risk of the suicide Attempt and that the nurses acted Unreasonably but since There was insufficient notice Given the facts of this case and because the nurses Acted reasonably Polaro's claims fail against them His argument On notice is essentially that the IMRs That he filled out Provided notice But that is not the case based on Seven circuit precedent including the Belbashire and Gaten case that are cited And in comparison To the facts of this case Both of those cases highlight The fact intensive nature Of reviewing these types of claims And both of them support the argument That the individual nurses Did not have substantial Notice of the risk of the suicide Attempt which is really the key issue in this Case. Mr. Casper this is Judge St. Eve. The third request That Nurse Reed reviewed Went a little bit further Than the first two medical requests And it specifically Put her on notice That his Mr. Polaro's mother and brother Had just died. It went On to say he was sick, he needed his Medicine, he couldn't eat, sleep, vomit But it went beyond Just physical Attributes. It included That his mother and brother had just died Why wouldn't that be sufficient For a reasonable jury to Conclude that she was put on notice At that point that he was suicidal Well a couple of things Your honor, the third IMR You're correct, it did note physical Complaints but there are no indications Of depression, suicidal Ideations or threats of self Harm and what Nurse Reed did was that She called a corrections officer To go and Observe Polaro and See if he was in any distress It was reported that he was walking around Making phone calls and asking For the remote but then On top of that, after he was Apparently not in distress She still called Dr. Butler And was told to set up a vitals Check and report any abnormal Results. It was reasonable To rely on the corrections officer's Report. Polaro's Own expert agrees with that That it is reasonable for nurses to Rely on corrections officers who are Seeing the inmates More often Pretty much every time they're out there And it was also reasonable for her To rely on Dr. Butler's request To have the vitals checked If you look at the totality of circumstances I think what she did was certainly reasonable And there was No notice to her that he was suicidal At that point. What about the Argument that she Did not convey to Dr. Butler This additional information That Mr. Polaro had put In his medical request, specifically His Conveying the information that His mother and brother had recently died And he might be in distress because of that Well The fact that he Filled out the IMR and didn't Indicate that he was in distress I think is very significant I think the fact that he filled out The booking form and didn't Indicate that he was suicidal at that point Is significant. I think the Fact that... But this is just as to Nurse Reed. I don't think there's any Booking form I'm just talking about the Medical requests that were submitted that We know she did see And your response was She called Dr. Butler But if she didn't convey specific Information that could be A sign of distress to Dr. Butler How does that impact your Argument? Well, I think two things She called the zone officer, received a report Of non-distress She did provide Some information to Dr. Butler And whether or not the Totality of that was provided He subsequently had the vitals check And was determined to be In excellent shape With respect to his vitals And the observation that the Subsequent nurse, Nurse Scroi Undertook. So I don't think that it's relevant Sorry to interrupt, Mr. Casper What should we make of the fact that Nurse Reed, after she received This direction from Dr. Butler Did not go and conduct The vitals check or have it done At that point, but instead left A note for the Next nurse without any real Explanation Well, again, I think if you look at the Totality of circumstances, the fact that she Received a report that he Was not in distress and that he wanted his Medications And she was not able to release the medications And again, Dr. Butler Had made the determination that She was not going to release the medications That it was reasonable for her To do that at that time And again, I think that proved to be True when Nurse Scroi Performs the vitals check and Everything comes back excellent She's inches away from Polera During the examination Polera does not tell her He's suicidal at that point In fact, he never tells Any of the nurses that he was suicidal Or a threat of self-harm Which I think is a key point That is being overlooked here Especially given the fact That Polera himself Admits that He recalled the vitals Check he remembers Nurse Scroi checking him Out and he admitted that if he was He could have said something And he didn't and I think that's Significant because his own expert admits That you can't say What caused him to do this He cannot say There's really no expert opinion That suggests anything that the nurses Did Any of their conduct Contributed to Mr. Polera's decision To attempt suicide Mr. Casper Mr. Casper your time has expired Would you please sum up Sure I think that given the totality of the Circumstances in this case There is not sufficient notice Under Belbashar or Gaten And the nurses acted reasonably In consideration of all the facts and Circumstances thank you Thank you Ms. Putney May it please the court My name is Patricia Epstein Putney I'm representing Dr. Karen Butler In my short time I would Like to provide to you a more accurate And undisputed summary of the fact Relating to Dr. Butler's Limited role in responding to two Phone calls that weekend One on a Saturday early evening And the next on a Sunday late afternoon I ask you to step Into the shoes of Dr. Butler for those Two phone calls which you're required to do With respect to each named defendant And I believe you will Determine that her conduct was Objectively reasonable under the Fourth amendment as applied by the District court I will take each Phone call separately I would like to address the Criticism that Dr. Butler's Phone calls were not documented by Dr. Butler she was Off site and it's routine and the Testimony revealed that when The nurses would call her on the weekend Or whenever she wasn't there she would Visit on Tuesdays that the Nurses would be the ones to document those Phone calls with regard To the first phone call Saturday Evening at about 5 p.m. Dr. Butler had been Uninvolved prior to that time Keep in Mind that the first medical Request has no indication Of any physical discomfort It just reflects that Mr. Polaro wanted his Two medications and They had not even been brought into the facility Yet so with regard to the first call The meds had been brought in And the nurses had counted them Keep in mind these are both controlled Substances Clonazepam is a benzodiazepine And tramadol is a narcotic Both potentially dangerous Medications there is No evidence whatsoever in the record During that first phone call that Dr. Butler Had any knowledge that he was feeling Unwell The second Inmate request occurred Three hours after the phone call With Dr. Butler that evening So just ask that you keep that Factual Point in mind The only decision for Dr. Butler During the first phone call was whether She should set up those medications The counts Were more than off Or low as described in Mr. Gandy's briefing There was a gross and egregious Miscount To both of the prescriptions that had been Filled just the day before For the clonazepam Out of 60 pills 26 were missing Only 2 should have been missing If they had been taken as prescribed For the tramadol Out of 120 pills 39 were missing Only 4 should have been missing Now although jail policies and Care for a medical doctor The cases do hold that they provide Some guidance and helpful data And I'd refer to the Collins case for that In fact there was a jail policy Providing guidance to the health care team As to what to do in this Very situation There is a policy called psychotropic Medication handling It's in the record at 187-6 page 1 and 29 And I'd like to read a pertinent Part of that policy It says medications are Continued for detainees who have Been compliant and whose Prescriptions are found to be current Correct and congruous It then says Quote prescriptions involving Noncompliance are not Continued the next line Subsection 5 says Benzodiazepines and Narcotics warrant a call to the jail Physician for orders So I submit to you that During that first call both Dr. Butler as well as the nurse Who was counting the medications Were complying with the jail policy And Dr. Butler Was eminently reasonable In her decision To not continue those medications At that time She testified that it would have been A dereliction of duty to continue Those medications and the lower Court found that her exercise Of professional judgment was Objectively reasonable As I believe Judge Barrett Pointed out or it may have been Judge St. Eve Dr. Ness provided support That that was a reasonable thing To do he himself was a jail physician There is no evidence To support that that was not an objectively Reasonable exercise Of her discretion I would point out that Dr. White Thomas White who has Been Referred to by the plaintiff Is not a medical doctor He is a psychologist with a website Called suicideconsultant.com He testified That he is not Competent to offer any testimony On how a physician should handle Medications and he In his role as a psychologist Defers to medical staff for those Questions I will answer the question Why Dr. Butler Would not have set up a withdrawal Protocol at that time There would have been no objective basis To do so the policies Indicate that these are individualized Determinations And you certainly don't set up A withdrawal protocol for every inmate Who comes in drunk or for every Inmate who has a miscount of his medications So in that first call there was No objective evidence Of any distress on the part of Mr. Tolero What about the fact that The count was Significantly off Should that have Raised a red flag or Caused her to set up some type of Withdrawal protocol or at least To have him checked for withdrawal Symptoms My answer to that Your honor is that And she testified That this was the first part of a process We know that Mr. Tolero Was being checked in his Zone checks every 30 minutes We know later obviously With hindsight that the nurses called To the zone officers To see how he was doing And to follow up on these The second and third IMRs You know there is some armchair Quarterbacking that could go With regard to any case The question is was her decision at that Point in time objectively Reasonable And then I would like to just switch I know my time is short to the Second phone call because As you know things are fluid In the jail setting So the second phone call is Different I will Point out that the second IMR By nurse She did not call Dr. Butler On Saturday night it was Nurse Reed who called her on Receiving the third IMR And what we know from that Conversation I know the court was Asking is there a dispute of fact As to what was said in that phone call Both nurse Reed and Dr. Butler testified because It was six years later they didn't remember Every nuance of the phone call What they did know is that Physical distress symptoms were  And as a result of that Dr. Butler Ordered that full vital signs be checked The reason that's Important Your time to expire Would you please sum up Yes my son is just With regard to the second phone call Taking vitals Is the first step under the Withdrawal policies both for Alcohol and for substances And so I believe In taking the vitals which Ended up normal and Mr. Butler was in no distress That Dr. Butler was objectively Reasonable and say okay now I have Evidence of some physical Discomfort and Let's take his vitals and see what's going on And call me back if They're not normal Thank you very much for your time we ask You to affirm the court Decision with respect to Dr. Butler Thank you We'll now turn back to Mr. Butler's Arguments which frankly Support plaintiff's case As well as plaintiff's arguments Dr. Butler's own attorney indicates That these were dangerous medications That there was a gross amount of Missing medications that these were For psychotropic purposes And the significant amount As Judge St. Eve indicated shouldn't That have set off a red flag It should have been a flashing Red light If what Dr. Butler Is saying is true that she was So concerned about these dangerous medications That she wouldn't allow Mr. Player to have one more Prescribed pill For his anxiety And physical pain and yet She did zero follow Up whatsoever as Judge St. Eve also pointed out In these type of circumstances This is the exact Purpose for the withdrawal And detoxification protocols Vital signs are Not the precursor To put a Patient or a Prisoner who is expressing mental And physical distress Vital signs aren't the precursor To whether or not that Individual should go on withdrawal And detoxification protocols The precursor is whether or not They have abused those substances And need titration And none of that has been addressed By Dr. Butler There were red flags And red lights flashing all over And all of these Late entries actually the two of them To support the defendant's case The jury could look at this Your honors and say this is an Attempt to cover our tracks I would also note None of the defense attorneys Indicated the failures of the County Of individuals Who were responsible for intake And the nurses Who were responsible for medical care And Dr. Butler who was Responsible for the treatment plan Made any Attempt whatsoever To look at Mr. Polaris Pre-existing history Where he was on suicide watch Where he was taking the clonazepam Where his medications were being Titrated appropriately in 2011 If that's not a dereliction Of duty I don't know what is What more could Mr. Polaris do than Scream through his inmate medical Request forms that he was in Dire need of not only His medications but some attention Now whether or not That is a direct indication that He is suicidal That remains a question of fact But the 36 hours where he's expressing Distress and the nurses Are essentially ignoring those request Forms despite the fact That they are required to immediately Respond to them and the Late entries where the nurses are Relying on correctional Staff to make mental health Evaluations it's Absurd this is not even A close case in plaintiff's opinion The plaintiffs received Nary a single Reasonable Inference at summary judgment In fact the district court Let the defendants off because they couldn't Read Mr. Polaris mind In 25 years of practice I haven't seen that in a case That I've been involved with and I've Never seen it in case law That is unreasonable To the nth degree Mr. Polaris Had a pre-existing history at the Facility he was Screaming for attention through his IMRs He was acting bizarrely And crying and pounding during The intake process which required He be put in an observation cell Another inmate Heard his Suicidal comments Saw his suicidal gestures The brother called After the drop off of the medications And what happens Late entries that correctional staff Went to observe Mr. Polaris he was making phone calls How do you make phone calls In a detention facility Don't you have to be released to do Those things he was making multiple phone calls And Mr. Bitar said on his initial argument That the nurse who did the vital spent 10 minutes with Mr. Polaris no such Entry in the record it takes 30 seconds or less To do a vital check blood pressure Temperature respiration 30 seconds or less And there's no chart entry by that Nurse other than the vitals that were Entered so I would assert To this court that not Only through the briefs but now At oral argument the Defendants have raised little to No issues That require sustaining The lower court's decision There are myriads of Material disputed facts That we receive no inference on And we respectfully request that The district court's opinion be reversed In all respects thank you very much Your honors Thanks to all council The case is taken under Advisement